Thank you. Our next case for argument this morning is Conyers v. Chicago. Mr. Flaxman. Good morning, Your Honor. May it please the Court. This case is about a policy that the City of Chicago applies to arrestee property. The primary issue involves the taking clause of the Fifth Amendment as suggested by the concurring opinion in Lee v. City of Chicago. The appellee, the City of Chicago, argues that its police powers allow it to sell or destroy detainee property that is not claimed. Mr. Flaxman, can I ask you a question? You would agree that the police powers allow the City to take the property, right? Absolutely. What are they supposed to do with it? Don't they have an ancillary police power here to return or to destroy the property? I think about this in terms of much of this property has some value to the inmates. Some of the property does not. Let me give you an example. A police report says a witness identifies a shooter wearing a blue coat or some object that an inmate is then arrested wearing. I've seen plenty of instances where the inmate will later claim, that's not my property and I don't want it back. And once the police says it has no evidentiary value, what is the City supposed to do with it if they can't get rid of it? I think there are three answers. The first is in your hypothetical, you identified abandoned property. That was my next question. This is not about abandoned property. What we contend the City should do is to follow Illinois law, which requires the local police not to send all of the arrestee's property that is not contraband, that is not of evidentiary value, along with the arrestee to the Sheriff of Cook County. Mr. Flaxman, you just stated my principal question, which is why are we here? Your answer to Judge Kirsch is what the City should do is follow Illinois law. And that seems to be a theme of your brief, that you contend that the City of Chicago is not complying with Illinois law. So why are you making a constitutional argument in federal court rather than making a state law argument in state court? Well, there are two reasons, two answers to that, Your Honor. The first is that the state courts recognize the Illinois tort immunity statute as a complete defense for these kinds of claims. Why don't you make a prospective claim on behalf of your clients? No, it's all retrospective claim. My clients never intend to get arrested again and never face this problem again. Could I interject with one question that's related to this, although I have another one that I'll let you get in a minute? Your clients had property that was deemed abandoned in a way that you think was inappropriate, not in accordance with their actual intentions, etc., etc. So their property was destroyed. Do they have a remedy in the Illinois claims court? No. The Illinois claims court is actions against the state of Illinois. Here, the property was destroyed by the City of Chicago, which has to be sued in state court where the city will vigorously assert its absolute immunity from paying damages in this kind of case. OK, so is the essence of your complaint, there's some hints of this in your brief, but maybe it's not what you're saying. Is it just that 30 days is too short for due process purposes or whatever, and they should be like New York and have 120 days or some other length of time? In New York, it's 120 days after the criminal case is done. In Chicago, it's 30 days after you're arrested. Our position is that's an arbitrary and irrational presumption and that they're not entitled to make that. Getting back to Judge Easterbrook's question about the state law, the basic principle that we're relying on is that state law determines property rights. Federal law determines the process that is due before that property is destroyed or sold or taken by the state or state actors. And what is your strongest authority for the proposition that the Constitution prohibits a claim period as short as 30 days? I hope you're not saying that the 30 days allowed to file a notice of appeal from an adverse decision in state court is unconstitutionally short. Some prisoners may have trouble meeting that deadline, but in fact they do. Why is this 30-day deadline any more unconstitutional than the time to file a notice of appeal? It's a 30-day deadline, and then we take your property. The city, we contend, does not have that authority to say we're destroying or selling your property if you don't come pick it up. When we know that you're in the Cook County Jail, you can't come yourself to get it, and many people can't afford to hire. If you lose this case in district court, you're still in the Cook County Jail. We have plenty of prisoners, state and federal, file notices of appeal within 30 days. I'm trying to figure out why, in your view, 30 days is too short to file a claim. Now, you can answer that either by pointing to some case so holding. Your brief doesn't, or with some original argument that would distinguish claims to property from the sort of claim made in a notice of appeal. So I'm inviting you to pursue that possibility. Claims to property are within the literal language of the Fourth Amendment. They're involved in effects. Absolutely, the Fifth Amendment. The Fourth Amendment talks about the rights of the people to be secure in their persons. There is no question being raised in these cases about whether the property was seized on probable cause. The question has to do with its disposition, and that is within the scope of the Fifth Amendment. If you're going to quarrel with my question and not answer it, that's within your privilege. But I heartily suggest that you answer my question rather than try to avoid it. I will try to be more precise, Your Honor, and I apologize for appearing to avoid, which I inadvertently did. The Fifth Amendment prohibits the government from taking property without due compensation. Without due process of law is what it says. And no property shall be taken for public use without just compensation. Stop quibbling. Deal with my question, Mr. Flaxman. I've lost track of what your question is. Yes, I know, because you were quibbling instead of dealing with the question. I asked, why is 30 days too short? And I said there were two ways you could address that question. One is you could point to some dispositive authorities saying that it's too short. The other is you could make an original argument about why 30 days is too short. And if you were going to make such an argument, I said, I would like you to deal with the question why it therefore isn't also too short to file a notice of appeal. I was trying to answer that question poorly, obviously, by trying to point out that there's a difference between filing a notice of appeal and reclaiming property that is being held that you're unable to maintain possession of while you're in the Cook County Jail. The 30-day period, our position is that there is no period that the city can say we will keep or sell your property if you don't pick it up within X amount of time while you're still in jail. The city, we say, may not hold that property, and the city may not destroy that property. Or designate where you should send it. They should send it to the Sheriff of Cook County in accordance with the accepted and ordinary procedures of state law. You're now back to state law, and I thought you've already agreed you're not making a claim under state law. So I thought at one point you had been saying, and the district court seems to have thought this too, that the problem with 30 days for property disposition, unlike various other 30-day periods in the law, is that the way this system is operated, it's insufficient notice to the inmate and doesn't give them... I mean, like, if you told them 48 hours before that they were going to have their property destroyed and it was going to be regarded as abandoned, we might say that that was just too short. Or if you give somebody notice that they're going to have an injunction proceeding against them and you only give them 24 hours notice, we might say that's too short. So I thought that you had been arguing from a Fifth Amendment due process point of view that the 30 days is too short, and I also thought that you were arguing from a Fifth Amendment takings point of view. I'm not sure what you're saying, whether there's no public purpose. I guess one could disagree with you about that, but there's no public purpose, or whether you're saying that there can't be abandonment under this circumstance. I don't know. But there are some arguments that seem to belong in your procedural due process bucket and some arguments that seem to belong in your takings bucket. Our position about the 30-day time period is that as long as someone is being held as a pretrial detainee, there is no amount of time that is reasonable for the city to say, if you don't come and get your property while you're locked up at the jail, we will destroy, we will sell or destroy your property. But the city does allow a representative. I take the point that the detainee isn't going to go over to the police department and show up at this desk, but the city permits a representative. But not everybody is able to find a representative or employ a representative to go to the city and retrieve the cell phone, which might have great value to the detainee, but not enough value for somebody to go from Peoria to the Cook County Jail, or the evidence and recovered property section to retrieve the property. Our position is that there is no period of time as long as the person is incarcerated as being a pretrial detainee, that allows the city to say, we're going to destroy the property. I think Judge Kurtz was hitting with the question that the city suggested for the first time in its appellee's brief that, well, if we don't destroy the property, we're going to run out of room to store everything. That argument wasn't raised in the district court. If it had been raised, we would have been able to show, I think, that the city has ample space to store this material, and that it could simply send it along to the sheriff and say, we're not going to store it. You store it. But there's no there's no to say that we are now. My question was just a little bit different because I guess I want to make sure that your theory is not that the city or the sheriff or somebody should store this property indefinitely till the end of the world. At what point can the city or the sheriff say the property is abandoned, or we can get to five years, 10 years? I mean, and how do we determine that? The city says under its abandonment statute, it's very clear when they consider the property abandoned. And what they can do with it, by the way. Well, it's very clear the way they apply it. But what we're saying is that there's no time, while the criminal case is pending, when the person stops being a detainee, the city and the sheriff are free to set what they find to be a reasonable time to let people pick their stuff up. Is there a difference if somebody makes bond or doesn't make bond? And then who keeps track of that? If they make bond, they could come and retrieve their property. If they're locked up awaiting trial, they can't come and get their property. Mr. Flint was locked up, I think, for five or six months before his criminal case was resolved in his favor. And it was too late for him to go get his cell phone. That's what we're saying is that there's no time period that's reasonable while you're being detained awaiting trial. Everybody doesn't have an agent or a family member who can go pick up their stuff. And that's our position. I hope I've answered the questions, but I suspect I'm not sure at this point that I understand your position. Because your initial answer to Judge Kirsch is that what you wanted the city to do is follow state law. And you were saying that state law provides 120 days rather than 30. But what you are now saying is that the Constitution entitles or requires the city to be an uncompensated bailiff property for as long as the owner is in prison, which, of course, could be 50 years. Not in prison, Your Honor. Being held as a pretrial detainee. Mr. Flaxman, after somebody is sent to prison, he can't come and pick the property up. That's a different situation, and we're not advocating for the rights of people in the penitentiary serving natural life that we have to hold their cell phone. I'm now lost about what the constitutional principle is. If the deadline has to be keyed to when the owner can come and pick up the property in person, that's not a period of pretrial detention. That's the period of custody. If the constitutional principle is something else, I would like to hear you articulate it. The constitutional principle is that while the arrestee is being is a pretrial detainee, the city may not sell or destroy his or her property when the person ceases to be a pretrial detainee, either by being released on bail or by successful termination of the criminal case. Why is that a constitutional line when it does not mark the difference between being able to pick it up in person and not? I think it's part of the reasonableness calculus that has to be applied here. Okay. Thank you, Mr. Flaxman. Thank you. Ms. McLaughlin. May it please the court. Plaintiffs alleged a due process claim in this case, and that claim was that the city did not provide them with adequate notice of the police department's procedure to claim property that was stored when they were arrested before the city disposed of the property as abandoned. That due process claim is governed by standards established by the Supreme Court in West Covina and Memphis Light and by this court in Gates. Plaintiffs adduced evidence in support of that claim, and that evidence was insufficient to allow a reasonable jury to find in their favor because the evidence, which was undisputed, showed that the city's policy was to provide arrestees with notice of its procedures to claim their stored property. Can I ask, Mr. McLaughlin, let me just make sure I understand at least the city's position on this. It's a really interesting case in that the city is saying that for non-cash property, non-monetary property, these instructions on the website of the Chicago Police Department are adequate to provide notice. And they're actually, you know, I've looked at them. They're quite detailed. I don't think there's anything wrong with them. And the fact that inmates, pretrial detainee type inmates, may not have immediate Internet access isn't important because these CRWs, whatever they are, the social workers of some type, can serve as intermediaries. So somebody can say, would you see if I have some property? And they go to the CRW somehow. And the city kind of pats itself on the back that it gets three-quarters of the cases right, and they only destroy things wrongly a quarter of the time. But it's this notion of the intermediated access that I think is interesting here, that it's enough if the city allows some intermediary to tell the person what to do. Is that right? Your Honor, that is what the evidence shows, that these intermediaries do assist inmates at Cook County regularly in retrieving property. But I do want to clarify. And how do they get their property back? Do they actually physically write down, you know, send it to my mother at this address or something? Or the mother has to come physically to the police station? Your Honor, let me make a couple of points about that. I first want to clarify what they're required to do to claim the property, because I think that hasn't been discussed to this point. They don't have to show up within 30 days or send a designee within 30 days. They just have to make contact with CPD. That's what the website says. And then also the notice, the paper form that they're given, says contact CPD within 30 days. And so— So this is actually a very different system you're describing, a system in which things begin by 30 days as opposed to things are completed by 30 days. Right. And the record—the second point I want to make is that the evidence, the record in this case on summary judgment was developed based on the claim that plaintiffs brought, which was a claim about adequacy of notice of the city's procedures. The challenge was not that those procedures themselves were inadequate for a particular reason, such as the 30-day issue that counsel is discussing today. So our position is that that type of claim is waived because it was not the claim alleged in the Fourth Amendment complaint, and it was not the claim presented to the district court. It's not what the parties litigated for seven years. So we don't have a record developed on, you know, can I send my mother to claim this property? But I can tell you what the notice says, because that is in the record. It says contact CPD within 30 days to claim your property, or it will be deemed abandoned. And a phone call would do that? Yes. There was one distinction. Let me turn your attention for a second from the notice, from what I think was the due process aspect of this case to the takings aspect, which I don't think was developed as well as it should have been. But I was disturbed by the city's seeming position that as long as you said we seized this property pursuant to our police power, not pursuant to the Fifth Amendment, that's a free pass for everything, which it surely is not. The city, it's the substance that matters. Did the city take the property? And perhaps public use is just what Judge Kirsch was talking about. They can't be the storage bin of all time. And so the public use might be just wise use of city resources, having a regular abandonment policy. But you can't really be saying that as long as you call it the police power, you're outside of the takings clause. Right, Your Honor. I just want that clear. Well, actually, I want to clarify. We can't just say it's police power and get out of our constitutional obligations. And I will part ways with you in saying this is a takings clause issue. But I do, I want to, my point is that there's not a- No, I was just saying in terms of analyzing a takings claim, if I send a Chicago police officer into your home and they took your cell phone and your iPad and whatever else you happen to have around away, and I said, oh, this is pursuant to the police power, you haven't been a responsible user of these devices, you would say, no, you've taken my property and let's have a proceeding to see if this was a valid taking or not. Was I compensated? Was there public use? You know, the usual stuff. So I just think these are two separate lines of analysis. And as I understand the plaintiffs, although they got sort of caught in the switches between Williamson and Nick and other things, I understand the plaintiffs should be saying that the city just took their property and didn't provide a pathway to compensate them for it. Right. Your Honor, the situation that you mentioned, if we, pursuant to a search or something like that, take the property, there probably is going to be a Fourth Amendment claim there. Suppose you're sunning yourself in the front yard and, you know, just minding your own business, and a police officer comes and takes your iPad away from you. I don't want to get messed up with whether there's a search or it's a warrant or the Fourth Amendment. You can't mean that there's no way that could be regarded as a potential taking just because it's a police officer who took it. Your Honor, I would sue under the Fourth Amendment in that situation and potentially under due process. But I think your concern is that there is a constitutional gap to fill here. Well, how about this hypothetical? Suppose there's a city block of property, and on that block is a derelict building owned by Smith. And the city thinks, boy, we're really tired of this derelict building being there. So they send in some machinery, and they demolish the building, and they put grass down, and they create a park. And then the person wants compensation for the value of the land. The city surely can't say, we think that that derelict building was a public safety hazard, and therefore we've just fixed the public safety hazard, and we don't have to compensate you for your land. Surely the city has to settle up on the value of the land they took to create a public park. Yes, that's a classic use of eminent domain power. Exactly. And I'm saying just because they are waving their hands around and talking about police power and safety doesn't exempt them from the takings clause of the Fifth Amendment. No, it's not an exemption. But what we're explaining is— There are many situations where you can look at things through a couple of different lenses. Yes, there are. And the best fit for the situation here is the due process lens. Taking this doctrine doesn't help us understand whether the disposition of this property was done pursuant to notice. What it does do, though, is unlike the due process approach, which is just did the city jump through the right hoops, if in the end the city took someone's property and it does not offer any avenue for compensation for the property that was taken, you might have a Fifth Amendment problem because property that's taken, if it's, again, subject to all of the parts, public use, et cetera, under the Fifth Amendment, needs to be done. And I thought that the plaintiffs were saying that this presumption of abandonment in the face of people making efforts, kind of standing off to the side, jumping up and down and shouting, I'm not abandoning anything, is troublesome. And whether it fits within a legal box is one of the things we're here to decide. The presumption of abandonment is something that fits within the due process box. And the case, in fact, that plaintiffs rely on for this discussion of a- Why is it a due process point instead of something else? If I put my phone down at a restaurant and I leave it accidentally because I wasn't thinking, I suppose they could say I abandoned it, even if I call them 30 minutes later and say I think I left my phone there. But you could have a hair trigger on abandonment that would- When I think of abandonment, I think of things like adverse possessions, seven years. I think of things that are lengthy enough to justify an inference that the person really doesn't want the property anymore. This is abandonment pursuant to the terms of our ordinance, which sets out that the property will be deemed abandoned if it's not claimed within 30 days. Now, whether or not that's fair is not- First of all, that's not the claim they brought, and it is waived. However, if were that the claim they brought, that would be a due process question. And if you look at cases like Blandus, which they cite in support of a takings claim, although it's a due process case, the question is, was there a fair opportunity to challenge the government's conclusion about the state of affairs? There was an opportunity to challenge whether someone was an in-state or out-of-state resident for purposes of tuition. But the idea of conclusive presumption of abandonment comes from a situation where there's just no opportunity to challenge the government's decision. And that's a due process issue. And here, so what they appear to argue for the first time on appeal, is that there wasn't a fair opportunity to challenge the conclusion of abandonment of the property. And that, even if not waived, even if relevant to takings, is simply an incorrect characterization of our ordinance. Because there is an opportunity to challenge the conclusion that you abandon the property, and you do that by calling CPD or otherwise contacting CPD to tell them that you are claiming your property. Therefore, it is, again, we submit this is not relevant to takings jurisprudence, and also that there's no need to extend takings doctrine to this situation. Ms. McLaughlin, Mr. Flaxman says that other jurisdictions allow substantially longer times than 30 days. Do you disagree with that? He says that New York is 180 days. I don't disagree with that. I don't think it's relevant. Do you disagree with that because you've researched it and found that it's true, or because you haven't looked into it? We had a, actually our trial attorneys had an expert report prepared. And it was submitted in our 56.1 statement exhibits. And that person, who is a police practices specialist, noted that New York's, this is actually from our evidence, that New York has a policy of six months. Portland is 60 days. I don't know that there were other jurisdictions that he mentioned. But I think that's where that's coming from. And so, no, we don't disagree with that. There's at least one other method that I could imagine for handling property in city custody, and that's to charge rent, right? The worry that Judge Kirsch raised is that the city will be a perpetual, uncompensated bailey of heaps of property. Well, the alternative is to be a bailey with compensation, to charge a monthly fee for holding on to these things. And when the value goes negative, that is when you couldn't sell them to pay the fee, to destroy them. The city ever thought about that possibility? No, not to my knowledge, Your Honor. I do think that... Do you know whether other jurisdictions are using that possibility of charging a fee for holding this property? I'm not saying that it wouldn't work. It's not something that to my knowledge... It sounds from your previous answer like whether or not the city has done the work of finding out how other jurisdictions do this. You don't know how they do it. No, I only know the couple of jurisdictions mentioned in our expert report. That wasn't relevant to plaintiff's due process claim, and so it hasn't been explored in great detail, because this was a claim about notice. What does worry me about your proposition, and putting to one side all of this about the police power, is that one of the city's themes is we do it this way because we have to, or we will be overwhelmed. But if there are other ways to do it without being overwhelmed, that doesn't turn out to be a very good defense, does it? Your Honor, I do think the administrative burden of calculating and charging rent for more than 100,000 inventories a year would be significant. And so I'm not willing to voluntarily take on an obligation like that for the city. Prisons routinely hold property from the people who are in custody. And you could imagine just a fee per box per month. I don't, Your Honor, think that would be... Your watch has sufficient computing power to handle that.  Sorry, Your Honor. I apologize for interrupting. I don't see any more questions, so this case is taken under advisement, thanks to both counsel. Our third case for argument today...